So Ordered.

Dated: January 29, 2021



Katherine Maloney Perhach
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN
_____

In re:
W. Kent Ganske and                                              Case No. 20-21042-kmp
Julie L. Ganske,
               Debtors.                                              Chapter 11
_____

**DECISION AND ORDER (1) OVERRULING WINFIELD SOLUTIONS, LLC'S OBJECTION TO DEBTORS' HOMESTEAD EXEMPTION; (2) DENYING WINFIELD SOLUTIONS, LLC'S MOTION FOR ABANDONMENT; (3) GRANTING DEBTORS' MOTION TO AVOID FIXING OF LIEN; AND (4) DENYING WINFIELD SOLUTIONS, LLC'S MOTION FOR RELIEF FROM STAY**
_____

       The Debtors and one of their creditors have filed a number of motions and objections in this case that turn on one question: Was certain property the Debtors' homestead at the time a judgment against them was docketed so that they may claim an exemption in the property against the judgment lien creditor under Wisconsin law? Creditor Winfield Solutions, LLC ("Winfield") holds a money judgment against the Debtors in the amount of $1,524,461.15 (the "Judgment"). An Opinion and Order granting Winfield summary judgment was entered in the U.S. District Court for the Western District of Wisconsin on April 29, 2019 and the money judgment was entered on May 17, 2019. On June 4, 2019, Winfield docketed the Judgment in Door County, Wisconsin. At that time and through the present, the Debtors owned a home located at 2504 County Highway F, Baileys Harbor, Door County, Wisconsin (the "Baileys Harbor Property").

At the time the Judgment was docketed, the Debtors also owned a home located at 3114 Saddle Brooke Trail, Sun Prairie, Dane County, Wisconsin (the "Sun Prairie Property").

The question is presented most centrally in Winfield's Objection to Debtors' Homestead Exemption Claim (Docket No. 137). Winfield has also filed a Motion for Relief from Automatic Stay (Docket No. 138), seeking to foreclose its judgment lien and arguing that it is entitled to relief under 11 U.S.C. § 362(d)(2) because the Debtors have no equity in the Baileys Harbor Property and it is not necessary to an effective reorganization. Winfield has further filed a Motion for Abandonment (Docket No. 184), arguing that the estate should abandon any fraudulent transfer claims based upon the mortgages recorded against the Baileys Harbor Property by Brian Swanson and Patrick Place because the claims are burdensome to the estate or are of inconsequential value and benefit to the estate. The Debtors have countered with a Motion to Avoid Fixing of Lien (Docket No. 204), arguing that Winfield's judgment lien impairs their homestead exemption in the Baileys Harbor Property and should be avoided.

## Statement of Facts

The following facts are set forth in a statement of uncontested facts[1] and an affidavit filed by the Debtors. The Debtors assert that they built the Baileys Harbor Property in 2004 "as a second home with the intent to eventually make it our main residence." Docket No. 179, Debtors' Aff. at ¶¶ 3-4. They "kept the Baileys Harbor Property furnished with household goods, personal clothing, recreational vehicles and watercraft, and food products of a home" and "have never rented the Baileys Harbor Property out to another." *Id.* at ¶¶ 5-6. They

---

[1] At the preliminary hearing on the motions, Winfield and the Debtors agreed to submit a joint statement of uncontested facts in lieu of the Court conducting an evidentiary hearing. The parties have not filed a conventional statement of uncontested facts. Counsel for Winfield did not receive a response from Debtors' counsel regarding his draft of uncontested facts until the date they were due. (Docket No. 186-1.) Under the circumstances, he filed a Statement of Contested Facts. Counsel for the Debtors then filed a document highlighting the facts with which the Debtors agree. (Docket No. 172.) The Court has treated the highlighted facts as uncontested for the purposes of this Decision and Order.

2

"continuously spent many weekends, holidays, family events such as birthdays, and vacations at the Baileys Harbor Property, and have also resided at the Baileys Harbor Property when doing business in the area or when visiting friends and business associates." *Id.* at ¶ 7. They divided their time between the Baileys Harbor Property and the Sun Prairie Property, maintaining "continuous occupancy of the Baileys Harbor Property, albeit on a part-time basis." *Id.* at ¶ 8-9. Mr. Ganske spent time at the Baileys Harbor Property while doing business in the area, and Mrs. Ganske spent time at the Baileys Harbor Property while working in special events coordination and public relations/advertising for a local winery. *Id.* at ¶¶ 16-17. "In the past," they "maintained residences in Dane County and continue to lease an apartment to support Julie's elderly mother who needs caretaking in Madison and because Julie works 24-30 hours per week in Madison at University Hospital and Clinics and also acts as a consultant in advertising and public relations for United Coop in Beaver Dam." *Id.* at ¶ 13; *see also* Docket No. 172, Uncontested Facts, ¶ 24.

In "June and July 2019," the Debtors changed the garaging of their vehicles to the Baileys Harbor Property address, as well as the addresses provided to "Social Security and employers, etc." Debtors' Aff. at ¶ 12. When asked, "when did you start to occupy your home in Baileys Harbor as your homestead?" at their § 341 meeting, a question that apparently called for the Debtors to draw a legal conclusion about what it means to occupy a property as a homestead, Mr. and Mrs. Ganske answered, "late June, July sometime" of 2019, though they "didn't keep a diary." Uncontested Facts, ¶ 16. On the Debtors' Statement of Financial Affairs, in response to the question "[d]uring the last 3 years, have you lived anywhere other than [the Baileys Harbor Property]," the Debtors reported that they lived at the Sun Prairie Property from August 2013 to the Summer of 2019. Uncontested Facts, ¶ 15. The Debtors listed the Sun

3

Prairie Property for sale in August of 2019 and sold it on March 13, 2020. Debtors' Aff. at ¶ 11. They represented in a Court filing that they hired a moving company and moved personal property from the Sun Prairie Property to the Baileys Harbor Property in August 2019. Uncontested Facts, ¶ 17. They stated they "have been and intend to continue to be permanently domiciled at the Baileys Harbor Property and have continuously considered the Baileys Harbor Property to be our home." Debtors' Aff. at ¶ 15; *see also* Uncontested Facts, ¶ 17.

When questioned at depositions in pending federal court litigation in the Western District of Wisconsin in December 2018, October 2019, and December 2019, the Ganskes reported their address as the Sun Prairie Property. Uncontested Facts, ¶ 14. A number of documents in the record also list the Sun Prairie address as the Debtors' address, including the Debtors' 2015, 2016, and 2017 federal income tax returns (Docket No. 157-4); two checks dated May 16, 2019 written by the Debtors to law firms (Docket No. 157-5); and the registration of a vehicle titled in Mr. Ganske's name (Docket No. 157-6 at 3). *See also id*. The Debtors also received mail at the Sun Prairie address: the 2018 Baileys Harbor Property tax bill (Docket No. 157-7) and a letter dated May 21, 2019 regarding recording of the mortgages on the Baileys Harbor Property (Docket No. 157-8). *See also id.*

## Discussion of Law and Analysis

### I.     The Court Overrules Winfield's Objection to the Debtors' Homestead Exemption.

In Wisconsin, a homestead "selected by a resident owner and occupied by him or her shall be exempt from execution, from the lien of every judgment, and from liability for the debts of the owner to the amount of $75,000." Wis. Stat. § 815.20(1). "The exemption shall not be impaired by temporary removal with the intention to reoccupy the premises as a homestead." *Id.* Wisconsin courts liberally construe the homestead exemption statute to protect homeowners.

4

*Schwanz v. Teper*, 66 Wis. 2d 157, 163, 223 N.W.2d 896, 899 (1974) ("[t]here is a strong public policy in this state to protect the homestead exemption"); *Moore v. Krueger*, 179 Wis. 2d 449, 454, 507 N.W.2d 155, 157 (Ct. App. 1993) ("we are required to interpret the homestead exemption statute liberally to protect the homeowner"); *see also In re Neis*, 723 F.2d 584, 587 (7th Cir. 1983) (referring to the "bias of Wisconsin law toward the debtor"). There is a presumption "that the property a debtor selects as the homestead for purposes of the exemption is, in fact, homestead property." *In re Lackowski*, No. 08-21496-pp, 2008 Bankr. LEXIS 5143, at *9 (Bankr. E.D. Wis. Sep. 24, 2008) (citing *Moore v. Krueger*, 507 N.W.2d at 159). Indeed, the homestead statute itself stems from the Wisconsin Constitution, which now reads, "[t]he privilege of the debtor to enjoy the necessary comforts of life shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability hereafter contracted." WIS. CONST. art. I, § 17.

Winfield argues that the Debtors did not maintain the Baileys Harbor Property as a homestead at the time the Judgment was docketed on June 4, 2019. The Debtors ultimately do not dispute that under Wisconsin law, a person must maintain a residence as a homestead at the time a judgment is docketed to claim an exemption against a creditor. *See In re Arnhoelter*, 431 B.R. 453, 454-55 (Bankr. E.D. Wis. 2010) (the homestead exemption requires ownership and occupancy); *see also Neis*, 723 F.2d at 586 (citations omitted); *Upman v. Second Ward Bank*, 15 Wis. 449, 453 (1862). The Debtors also do not dispute that "a person can have only one homestead at a time." *Moore v. Krueger*, 507 N.W.2d at 159. Rather, the Debtors assert that the Baileys Harbor Property was in fact their one and only homestead on June 4, 2019. Because there is no dispute that the Debtors owned the Baileys Harbor Property on June 4, 2019, the inquiry is whether they "occupied" it in a way sufficient for them to claim it as a homestead.

Under Rule 4003 of the Federal Rules of Bankruptcy Procedure, Winfield, as the objecting party, has the burden of proving that the Debtors have not properly claimed the homestead exemption for the Baileys Harbor Property.

All the persuasive authority most closely on point in this district and the Western District of Wisconsin supports the conclusion that the Baileys Harbor Property was the Debtors' homestead when the Judgment was docketed. In a trio of cases, Judge Martin, Judge Pepper, and Judge Clevert all found that debtors who resided at two different properties were entitled to an exemption in the property they selected as their homestead. *See In re Carter*, 550 B.R. 433 (Bankr. W.D. Wis. 2016); *In re Lackowski*, No. 08-21496-pp, 2008 Bankr. LEXIS 5143 (Bankr. E.D. Wis. Sep. 24, 2008); *In re Broesch*, 34 B.R. 554 (Bankr. E.D. Wis. 1983). The facts of these three cases are indistinguishable from the Debtors' case.

### A. Part-Time Occupancy Does Not Defeat the Homestead Exemption, Especially Since the Debtors' Absence Is Due to the Demands of Employment.

One commonality between *Carter*, *Lackowski*, and *Broesch* is that the debtors all spent time in a residence other than the selected homestead to fulfill their employment obligations. One could interpret this as exemplifying the directive of Wis. Stat. § 815.20(1): "The exemption shall not be impaired by temporary removal with the intention to reoccupy the premises as a homestead." Ms. Carter "spent at least two weekends a month and several weeks during the summer at the [exempt homestead] from 2002 until July, 2015, except 12 months following her divorce in 2009 when she lived in Florida." *Carter*, 550 B.R. at 435. She "spent significant time at two different properties simultaneously for the better part of a decade," residing in her homestead property on "weekends and holidays" and in her other residence "during the work week." *Id.* at 437. Several months after filing her bankruptcy petition, she moved to the property she claimed as a homestead full time after finding employment in that area. *Id.* at 435.

6

Ms. Lackowski spent her work weeks in a property "directly across the street from her job," which "saved her from having to commute back and forth to [the homestead property] each working day," a commute of approximately 155 miles each way. *Lackowski*, 2008 Bankr. LEXIS 5143, at *4. The arrangement also "allowed her to obtain medical treatment from specialists located in Milwaukee." *Id.* Ms. Lackowski was at the property she claimed as a homestead, an admitted "part-time residence," for "about three days or so out of each week" and holidays. *Id.* at *1, *5. Finally, when Mr. Broesch filed for bankruptcy, he was living in two places. He successfully claimed a cottage as his homestead, even though he lived in a condominium apartment during his four-day work week and lived in the cottage, which was approximately 257 miles away from his place of employment, from Friday through Sunday. *Broesch*, 34 B.R. at 555. In all three of these cases, the courts held that the debtors sufficiently occupied their chosen homesteads even though they only lived in their chosen homesteads on a part time basis on weekends and holidays and spent their work weeks living at another residence closer to their place of employment.

The Debtors' living situation is indistinguishable from the facts presented in *Carter*, *Lackowski*, and *Broesch*. Here, the Debtors "continuously spent many weekends, holidays, family events such as birthdays, and vacations at the Baileys Harbor Property, and have also resided at the Baileys Harbor Property when doing business in the area or when visiting friends and business associates." Debtors' Aff. at ¶¶ 7, 16, 17. They divided their time between the Baileys Harbor Property and the Sun Prairie Property, maintaining "continuous occupancy of the Baileys Harbor Property, albeit on a part-time basis." *Id.* at ¶ 8-9. Mr. Ganske spent time at the Baileys Harbor Property while doing business in the area, and Mrs. Ganske spent time at the Baileys Harbor Property while working in special events coordination and public relations and

7

advertising for a local winery. *Id.* at ¶¶ 16-17. Mrs. Ganske "works 24-30 hours per week in Madison at University Hospital and Clinics and also acts as a consultant in advertising and public relations for United Coop in Beaver Dam," explaining why it would be convenient for her to stay in the Madison area during the week, instead of commuting almost 200 miles to the Baileys Harbor Property. Debtors' Aff. at ¶¶ 8, 13; Uncontested Facts, ¶ 24. There is nothing in the record that refutes these facts. Like the debtors in *Carter*, *Lackowski*, and *Broesch*, the Ganskes occupied the Baileys Harbor Property as their homestead even though they only lived there on a part-time basis on weekends and holidays and spent their work weeks living at another residence closer to their places of employment. The nature of their occupancy requires the Court to uphold the Baileys Harbor Property as their homestead on the date Winfield's Judgment was docketed.

### B. The Debtors' Maintenance of the Baileys Harbor Property Is Consistent With Use As a Homestead.

The *Carter*, *Lackowski*, and *Broesch* courts also discussed the character of the selected homestead. Ms. Carter's homestead "was furnished and [] she kept canned and frozen food and some of her clothing there." *Carter*, 550 B.R. at 435. Ms. Lackowski's homestead "was fully furnished as a home." *Lackowski*, 2008 Bankr. LEXIS 5143, at *7. Finally, Mr. Broesch's cottage homestead was "a house full of furniture," and after receiving full ownership of the cottage in a divorce, "he thereafter moved additional furnishings into the cottage so that his minor children might have ample accommodations when they visited." *Broesch*, 34 B.R. at 556.

Similarly, the Debtors in this case maintain they "have kept the Baileys Harbor Property furnished with household goods, personal clothing, recreational vehicles and watercraft, and food products of a home. [They] have continuously kept the Baileys Harbor Property furnished and livable" since 2004. Debtors' Aff. at ¶ 5. There is nothing in the record that refutes these facts.

8

The Ganskes may have moved personal property from the Sun Prairie Property to the Baileys Harbor Property in August 2019, after the docketing of Winfield's Judgment, Uncontested Facts, ¶ 17, but as in *Broesch*, the Baileys Harbor Property was already furnished and this does not demonstrate a removal from one homestead property to another. Like the debtors in *Carter*, *Lackowski*, and *Broesch*, the Ganskes' furnishing of the Baileys Harbor Property with household goods, food, furniture, and clothing is consistent with their occupancy of the Baileys Harbor Property as their homestead.

### C. The Debtors' Use of a Non-Homestead Address Does Not Defeat the Selection of a Homestead.

The *Carter*, *Lackowski*, and *Broesch* courts did not find the address used on a debtor's tax returns, driver's license, or car registration to be dispositive in determining whether the debtor properly claimed a homestead exemption. Ms. Carter used her non-homestead address on her driver's license and vehicle title and registration at the time she filed the bankruptcy case, she listed it on the past two years' of tax returns, and she even used it on her bankruptcy petition. *Carter*, 550 B.R. at 435. She also stated that she received mail at that address. *Id.* Ms. Lackowski used the non-homestead address on her "tax returns, her driver's license and her car title, and [] she had stated at her § 341 meeting of creditors that she received her mail there." *Lackowski*, 2008 Bankr. LEXIS 5143, at *2.

The similar facts in this case do not persuade the Court that the Baileys Harbor Property is not the Debtors' homestead. The fact that the Ganskes were asked at their § 341 meeting to draw a legal conclusion about what it means to occupy a property as a homestead is not dispositive. Uncontested Facts, ¶ 16. The fact that the Ganskes testified at their depositions that the Sun Prairie Property was their residence, used the Sun Prairie address on their 2015-2017 federal tax returns, pay stubs, checks, and bills, registered a vehicle at the Sun Prairie address,

9

and received mail at the Sun Prairie address does not demonstrate that the Ganskes did not occupy the Baileys Harbor Property as their homestead. Uncontested Facts, ¶ 14-15. Use of the non-homestead address on official documents and receipt of mail at the address are consistent with a living situation in which a person stays in one residence for work during the week and transacts business there. At most, this evidence demonstrates that the Ganskes also occupied the Sun Prairie Property. "But the statute and case law do not prohibit one from occupying two residences – only from claiming both as homesteads." *Lackowski*, 2008 Bankr. LEXIS 5143, at *22; *see also Carter*, 550 B.R. at 437. And here, the Ganskes have only claimed one homestead – the Baileys Harbor Property – and Winfield has not presented any evidence that the Ganskes did not occupy the Baileys Harbor Property at the time the Judgment was docketed.

> **D.  Selecting Property as a Homestead That Offers the Debtors the Greatest Benefit Does Not *Per Se* Invalidate the Exemption.**

It is no secret that the Debtors did not have any equity in the Sun Prairie Property where they also resided prior to filing the bankruptcy case and at the time the Judgment was docketed. *See e.g.*, Stipulation Between Debtors and the Bank of New Glarus Regarding Debtors' Motion to Sell Property of the Estate, Free and Clear of Liens, with Liens Attaching to the Proceeds, Docket No. 38 (stating that all sale proceeds remaining after payment of the first mortgage holder would be paid to the Bank). But acting in one's own interest in claiming an exemption does not by itself defeat the selection of a homestead. Ms. Lackowski did not own the property where she resided during the work week and could not have claimed an exemption in it. *Lackowski*, 2008 Bankr. LEXIS 5143, at *4. The condominium where Mr. Broesch resided during the work week did not have any equity in it and was on the verge of foreclosure prior to the bankruptcy case. *Broesch*, 34 B.R. at 556. The Ganskes' lack of equity in the Sun Prairie Property does not defeat their selection of the Baileys Harbor Property as their homestead.

Winfield has not met its burden of proving that the Debtors have not properly claimed the homestead exemption for the Baileys Harbor Property. The Debtors sufficiently occupied the Baileys Harbor Property as their homestead as of the date of the docketing of Winfield's Judgment. Therefore, the Court overrules Winfield's Objection to the Debtors' Homestead Exemption Claim related to the Baileys Harbor Property and finds that the Baileys Harbor Property was the Debtors' homestead when Winfield's Judgment was docketed.

## II. The Court Denies Winfield's Motion for Abandonment.

Winfield next argues in its Motion for Abandonment that the Court should order the estate to abandon any fraudulent transfer claims based upon the mortgages recorded against the Baileys Harbor Property on May 16, 2019 in favor of Brian Swanson and Patrick Place in the amounts of $75,000 and $50,000, respectively.[2] Mr. Swanson, Mr. Place, and the Debtors have all objected to the Motion for Abandonment. Winfield claims that spending time and money to pursue what the Debtors have deemed to be meritless fraudulent transfer claims would be burdensome to the estate. Winfield further asserts that setting aside the Swanson mortgage and the Place mortgage would provide no value or benefit to the bankruptcy estate because the Debtors have $1.2 million in negative equity on the Baileys Harbor Property, taking into account the Debtors' asserted value of the property at $300,000 and the $1.5 million judgment lien in favor of Winfield.

The Court disagrees with Winfield. 11 U.S.C. § 554(b) provides that the court may order the trustee to abandon any property of the estate that is (1) "burdensome to the estate" or (2) "of

---

[2] Winfield initially sought relief from the automatic stay for cause under § 362(d)(1) to pursue fraudulent transfer claims against Brian Swanson and Patrick Place. Winfield subsequently withdrew its motion for relief, recognizing that some courts have held that fraudulent transfer claims are property of the estate and can only be pursued by the trustee or the estate. See Docket No. 186 at 2; *see also National Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705, 708-09 (7th Cir. 1994) ("the right to recoup a fraudulent conveyance, which outside of bankruptcy may be invoked by a creditor, is property of the estate that only a trustee or debtor in possession may pursue once a bankruptcy is under way."). Winfield has now filed this separate Motion for Abandonment to address those claims.

11

inconsequential value and benefit to the estate." There is no evidence in the record to support Winfield's argument that the fraudulent transfer claims based upon the Swanson and Place mortgages are "burdensome to the estate." There is no evidence that the estate has any ongoing costs associated with the fraudulent transfer claims in the form of legal expenses or other fees. Presumably, the estate would only pursue such claims if the estate thought it had a legal basis to avoid $125,000 in mortgages on the Baileys Harbor Property and the value of any recovery would exceed the costs of such litigation.

The alleged fraudulent transfer claims related to the Swanson and Place mortgages are also not "of inconsequential value and benefit to the estate" such that abandonment would be appropriate at this time. The alleged fraudulent transfer claim related to the Swanson mortgage holds a $75,000 value to the estate and the alleged fraudulent transfer claim related to the Place mortgage holds a $50,000 value to the estate.

Winfield claims that "setting aside the Swanson Mortgage and the Place Mortgage will not result in the recovery of one dime for the estate," asserting that setting aside the mortgages would merely result in the Debtors' equity in the Baileys Harbor Property dropping from negative $1,384,126.15 to negative $1,259,126.15. (Winfield's Reply Brief, Docket No. 202, p. 2-3). But Winfield misconstrues the effect of avoiding a mortgage as a fraudulent transfer. Instead of creating non-exempt equity in the Baileys Harbor Property to which Winfield's judgment lien attaches, the effect of the avoidance would be to preserve value for the estate. Pursuant to § 551, any transfer avoided as a fraudulent transfer "is preserved for the benefit of the estate." As the Debtors put it, the "value goes to the estate; it doesn't disappear and allow junior lienholders to take first place." (Debtors' Objection, Docket No. 199 at ¶ 18). If the estate pursues the alleged fraudulent transfer claims related to the Swanson and Place mortgages, and

12

sets aside those mortgages, $125,000 in value would come into the estate. As a result, the fraudulent transfer claims related to the Swanson mortgage and the Place mortgage are not "of inconsequential value and benefit to the estate." Consequently, Winfield's Motion for Abandonment is denied.

**III.     The Court Grants the Debtors' Motion to Avoid Winfield's Judicial Lien.**

The Debtors have countered Winfield's motions with a Motion to Avoid Winfield's $1,524,461.15 judicial lien on the Baileys Harbor Property pursuant to 11 U.S.C. § 522(f), arguing that Winfield's judicial lien impairs the Debtors' $150,000 homestead exemption and should be avoided. Section 522(f) provides in pertinent part that "the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs [a debtor's] exemption . . . , if such lien is a judicial lien . . . ." According to the statute, a lien impairs an exemption "to the extent that the sum of – (i) the lien; (ii) all other liens on the property; and (iii) the amount of the exemption that the debtor could claim if there were no liens on the property; exceeds the value that the debtor's interest in the property would have in the absence of any liens." 11 U.S.C. § 522(f)(2).

According to the Debtors' schedules, the Baileys Harbor Property is worth $300,000.00. Uncontested Facts, ¶ 18. The parties agree that the following mortgages and judgment liens have been recorded against the Baileys Harbor Property:

| Encumbrance | Lienholder | Amount | Recording Information |
|---|---|---|---|
| Mortgage | RoundPoint Mortgage | $34,665.00 | Recorded in Door County on November 17, 2011 |
| Mortgage | Brian Swanson | $75,000.00 | Recorded in Oconto County on April 24, 2017, and recorded in Door County on May 16, 2019 |
| Mortgage | Patrick Place | $50,000.00 | Recorded in Door County on May 16, 2019 |
| Judgment lien | Winfield Solutions | $1,524,461.15 | Recorded in Door County on June 4, 2019 |

13

Uncontested Facts, ¶¶ 7, 10, 32, 34-35, 52, 56; Winfield's Motion for Relief from Stay (Docket No. 138), p. 10 n.2; Debtors' Brief in Opposition to Motion for Relief from Stay (Docket No. 178), p. 15.

The Debtors argue that the Baileys Harbor Property is valued at $300,000 and is subject to mortgages that total $159,665 ($34,665 for RoundPoint's Mortgage; $75,000 for Brian Swanson's Mortgage; and $50,000 for Patrick Place's Mortgage). The Debtors claim that Winfield's $1,524,461.15 judicial lien impairs their $150,000 homestead exemption on the Baileys Harbor Property. Winfield, of course, disputes the Debtors' claimed homestead exemption, asserting that the Baileys Harbor Property was not the Debtors' homestead at the time Winfield docketed its judgment.

As decided *supra*, the Baileys Harbor Property was the Debtors' homestead when Winfield's Judgment was docketed. Therefore, the question becomes: is Winfield's judicial lien impairing the Debtors' homestead exemption? Based upon the liens recorded against the Baileys Harbor Property, Winfield's judicial lien is in fact impairing the Debtors' homestead exemption:

| A. Amount of lien to be avoided | $1,524,461.15 (Winfield) |
| --- | --- |
| B. Amount of all other liens | $34,665 (RoundPoint Mortgage) $75,000 (Brian Swanson Mortgage) $50,000 (Patrick Place Mortgage) |
| C. Value of Claimed Exemption | $150,000 |
| D. Total of adding A, B, and C | $1,834,126.15 |
| E. Value of Debtors' Interest in Property | $300,000.00 |
| F. Subtract line E from line D | $1,534,126.15 |
| G. Extent of impairment | Line F is greater than Line A, so Winfield's entire lien is avoided. |

Winfield's lien impairs the Debtors' homestead exemption because the liens on the Baileys Harbor Property ($34,665 + $75,000 + $50,000), plus the Debtors' homestead exemption ($150,000), exceeds the value of the Debtors' interest in the property ($300,000) by $9,665. Winfield's judgment lien, therefore, impairs the Debtors' homestead exemption and the Debtors can avoid the fixing of the lien on the Baileys Harbor Property pursuant to 11 U.S.C. § 522(f).[3] Accordingly, the Debtors' Motion to Avoid Winfield's judgment lien is granted and Winfield's judgment lien is avoided pursuant to 11 U.S.C. § 522(f).

## IV. The Court Denies Winfield's Motion for Relief from the Automatic Stay.

Finally, Winfield argues in its Motion for Relief from Stay that the Court should grant relief from the automatic stay with respect to the Baileys Harbor Property pursuant to 11 U.S.C. § 362(d)(2) because the Debtors lack equity in that property and that property is not necessary to an effective reorganization. Winfield illustrates the Debtors' lack of equity in the Baileys Harbor Property by noting that subtracting Winfield's $1.5 million judgment lien from the Debtors' asserted $300,000 property value results in the Debtors having approximately $1.2 million in negative equity in the Baileys Harbor Property.

Winfield's argument runs contrary to two important determinations made in this decision. First, the Baileys Harbor Property was the Debtors' homestead when Winfield's judgment was docketed. Second, Winfield's $1.5 million judgment lien is entirely avoided pursuant to 11 U.S.C. § 522(f) because Winfield's judgment lien impairs the Debtors' homestead exemption.

---

[3] There have arguably been two changes to the dollar amounts of liens since the filing of these Motions: (1) RoundPoint filed a proof of claim in the amount of $33,089.04; and (2) Winfield filed an amended proof of claim in the amount of $1,221,642.95, stating that "[i]n December 2020, the Judgment was partially satisfied in the amount of $305,367.00." Claim No. 12-2. Even with these amended numbers, Winfield's lien still impairs the Debtors' homestead exemption because the liens on the Baileys Harbor Property ($33,089.04 + $75,000 + $50,000), plus the Debtors' homestead exemption ($150,000), exceeds the value of the Debtors' interest in the property ($300,000) by $8,089.04, so Winfield's judgment lien remains entirely avoided pursuant to 11 U.S.C. § 522(f).

The avoidance of Winfield's judgment lien results in there being $140,335 in exempt equity in the Baileys Harbor Property:

| | |
|---|---|
| Estimated Value of Baileys Harbor Property | $300,000.00 |
| RoundPoint Mortgage | ($34,665.00) |
| Swanson Mortgage | ($75,000.00) |
| Place Mortgage | ($50,000.00) |
| Equity | $140,335.00 |

Having determined that the Debtors have equity in the Baileys Harbor Property, there is no need for the Court to address in this decision whether the Baileys Harbor Property is necessary for an effective reorganization. Because the Debtors have equity in the Baileys Harbor Property, Winfield's Motion for Relief from Stay under 11 U.S.C. § 362(d)(2) is denied.

For the reasons stated above,

IT IS HEREBY ORDERED: the Objection to Debtors' Homestead Exemption Claim filed by Winfield Solutions, LLC is overruled.

IT IS FURTHER ORDERED: the Motion for Abandonment of all fraudulent transfer claims based on the Swanson mortgage and the Place mortgage filed by Winfield Solutions, LLC is denied.

IT IS FURTHER ORDERED: the Debtors' Motion to Avoid Fixing of Lien is granted.

IT IS FURTHER ORDERED: the Motion for Relief from Automatic Stay as to the Baileys Harbor Property filed by Winfield Solutions, LLC is denied.

#####